**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| Old Second National Bank, | |
| Plaintiff, | Case No. _____1:25-cv-3326_____ |
| | Honorable _____ |
| v. | |
| Printed Mint LLC; Christopher Ellis; and Mary Zychowski, | |
| Defendants. | Ad Damnum: $377,680.59 |

## COMPLAINT

**NOW COMES** Plaintiff, Old Second National Bank, by and through its attorneys, Ashen Law Group, complaining of the Defendants, Printed Mint LLC, Christopher Ellis, and Mary Zychowski, and in support thereof states as follows:

### PARTIES

1. Old Second National Bank ("Plaintiff") is a national banking association with its principal place of business in Aurora, Illinois.

2. Printed Mint LLC ("Borrower") is an Arizona limited liability company of which each and every member is a citizen of the State of Arizona.

3. Christopher Ellis ("Guarantor-1") is a citizen of the State of Arizona.

4. Mary Zychowski ("Guarantor-2") is a citizen of the State of Arizona.

### JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction in the above-captioned case pursuant to 28 U.S.C. 1332 because the matter in controversy is between citizens of different states and the damages claimed exceeds $75,000.00, exclusive of interests and costs.

6. This Court has jurisdiction over this matter pursuant to 735 ILCS 5/2-209(a) because the parties transacted business within the State of Illinois and the subject matter of this action is the performance of contracts substantially connected with the State of Illinois.

7. Venue is proper in this Court pursuant to the equipment finance agreement and personal guaranties described herein and attached hereto.

**COUNT I**
**BREACH OF EQUIPMENT FINANCE AGREEMENT**
**(against Printed Mint LLC)**

8. Plaintiff re-alleges and re-states Paragraphs 1 through 7 of the Complaint as though fully set forth herein as Paragraph 8.

9. On or about September 22, 2022, Borrower entered into Equipment Finance Agreement No. 63801063585 (the "Agreement") with Plaintiff for the finance that that certain (1) Used OvalJet High Speed Direct to Garment Printer S/N: OJ-3HP/14S-4560-#017 with Caldera Software and Seven (7) OvalJet Small Size Pallets, including all software, attachment and accessories (collectively, the "Equipment"). A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

10. The Agreement is a valid and binding contract.

11. Borrower took delivery and accepted the Equipment pursuant to the Agreement. A true and correct copy of the Delivery and Acceptance Receipt of Equipment by Borrower is attached hereto as **Exhibit B**.

12. Plaintiff confirmed acceptance of the Equipment, funded the supplier, and otherwise performed in accordance with the Agreement.

2

13. The Agreement provides for three $0.00 monthly payments followed by fifty-seven (57) consecutive monthly payments to be made to Plaintiff from Borrower in the amount of $11,451.89. *See generally,* Ex. A.

14. Failure to make monthly payments within ten days of the payment's due date is an event of default under Agreement. *Id*. ¶ 11.

15. Borrower defaulted on Agreement by failing to make the December 2024 monthly payment, and all subsequent monthly payments due thereafter.

16. In the event of Borrower's default under Agreement, Plaintiff may, *inter alia*, declare all sums immediately due and payable whereupon the unpaid principal and accrued interest shall become immediately due and payable. *Id*. ¶ 12.

17. Plaintiff has declared all sums due and payable.

18. Accordingly, all unpaid principal and accrued interest is due and payable.

19. In addition, in the event of Borrower's default under the Agreement, Plaintiff may charge Borrower eighteen percent (18%) interest on the accelerated balance. *Id*.

20. Default interest accrues at $66.72336 per diem until Borrower's payment obligation to Plaintiff is fully satisfied.

21. Further, Borrower is liable for Lender's costs and expenses incurred by Plaintiff in enforcing the Agreement. *Id*.

22. As a consequence of Borrower's default and failure to pay the balance due, as of March 28, 2025, there remains an accelerated balance due and owing to Plaintiff from the Borrower in the amount of $377,680.59.

23. Although due demand has been made on the Borrower to pay said amount due pursuant to the Agreement, and Borrower has failed and refused to pay said amount.

    **WHEREFORE**, Plaintiff, Old Second National Bank, prays for Judgment against Defendant, Printed Mint LLC, in the sum of $377,680.59, plus additional late charges, post-default interest, attorney's fees and costs that have accrued and will continue to accrue subsequent to the filing of this action, and any other relief this court deems just and reasonable.

**COUNT II**
**BREACH OF PERSONAL GUARANTY-1**
**(against Christopher Ellis)**

24. Plaintiff re-alleges and re-states Paragraphs 1 through 23 of the Complaint as though fully set forth herein as Paragraph 24.

25. In connection with Borrower's entry into the Agreement, Guarantor-1 unconditionally and absolutely guaranteed the full and prompt payment and performance of Borrower's obligations under the Agreement and simultaneously signed a personal guaranty ("Guaranty-1"). A true and correct copy of Guaranty-1 attached hereto as **Exhibit C**.

26. Guaranty-1 is a valid and binding contract.

27. Guarantor-1 defaulted on Guaranty-1 by failing to make the December 2024 monthly payment, and all subsequent monthly payments due thereafter.

28. Guarantor-1 is presently obligated to Plaintiff for the amount due of $377,680.59 pursuant to Guaranty-1, plus all additional late charges, post-default interest, attorney's fees and costs that have accrued and continue to accrue under Guaranty-1. *See generally*, Ex. C.

29. Although due demand was made on Guarantor-1 to pay said amount due and owing on Guaranty-1, Guarantor-1 has failed and refused to pay said amount.

**WHEREFORE**, Plaintiff, Old Second National Bank prays for Judgment against Defendant, Christopher Ellis, in the sum of $377,680.59, plus additional late charges, post-default interest, attorney's fees and costs that have accrued and will continue to accrue subsequent to the filing of this action, and any other relief this court deems just and reasonable.

**COUNT III**
**BREACH OF PERSONAL GUARANTY-2**
**(against Mary Zychowski)**

30. Plaintiff re-alleges and re-states Paragraphs 1 through 23 of the Complaint as though fully set forth herein as Paragraph 30.

31. In connection with Borrower's entry into the Agreement, Guarantor-2 unconditionally and absolutely guaranteed the full and prompt payment and performance of Borrower's obligations under the Agreement and simultaneously signed a personal guaranty ("Guaranty-2"). A true and correct copy of Guaranty-2 attached hereto as **Exhibit D**.

32. Guaranty-2 is a valid and binding contract.

33. Guarantor-2 by failing to make the December 2024 monthly payment, and all subsequent monthly payments due thereafter.

34. Guarantor-2 is presently obligated to Plaintiff for the amount due of $377,680.59 pursuant to Guaranty-2, plus all additional late charges, post-default interest, attorney's fees and costs that have accrued and continue to accrue under Guaranty-2. *See generally*, Ex. D.

35. Although due demand was made on Guarantor-2 to pay said amount due and owing on Guaranty-2, Guarantor-2 has failed and refused to pay said amount.

**WHEREFORE**, Plaintiff, Old Second National Bank prays for Judgment against Defendant, Mary Zychowski, in the sum of $377,680.59, plus additional late charges, post-default interest,

attorney's fees and costs that have accrued and will continue to accrue subsequent to the filing of this action, and any other relief this court deems just and reasonable.

## COUNT IV
### DETINUE
**(against Printed Mint LLC)**

36. Plaintiff re-alleges and re-states Paragraphs 1 through 23 of the Complaint as though fully set forth herein as Paragraph 36.

37. Plaintiff holds a valid first priority security interest in the Equipment and is first a properly secured creditor by virtue of the Agreement and corresponding UCC-1 Financing Statement filing with the Arizona Secretary of State on or about September 29, 2022, under filing Number 22-005-6471-4 (the "UCC-1") . A true and correct copy of the UCC-1 is attached hereto as **Exhibit E**.

38. Under the Agreement, Plaintiff has all of the benefits, privileges, and protections as a secured party under Article 2A Uniform Commercial Code and, in the event of default by Borrower, Plaintiff is authorized to, *inter alia*, repossess the Equipment, and sell or otherwise dispose of the Equipment in a commercially reasonable manner, with net proceeds to be credited towards the amounts due and owing. See Ex. A ¶ 12.

39. Defendant is in actual or constructive possession of the Equipment.

40. Due to Defendant's default under the Agreement as set forth herein, Plaintiff's right to possess the Equipment is superior to that of Defendant's right to possess the Equipment.

41. Plaintiff has demanded possession of the Equipment, and Plaintiff hereby demands possession of the Equipment, but Borrower has failed to surrender it.

42. Borrower's continued possession of the Equipment despite failing to make payment under the Agreement is unlawful and wrongful.

43. Borrower has and continues to be unjustly enriched as a result.

44. Due to Borrower's default under the Agreement, this Court should find Borrower must surrender the Equipment to Plaintiff and pay Plaintiff for its wrongful detention in a per diem amount prorated to equal to the monthly installment payment under the Agreement.

45. Plaintiff claims a return of the Equipment and a money judgment for the wrongful detention of the Equipment in an amount to be determined at trial.

**WHEREFORE,** Plaintiff, Old Second National Bank, prays for Judgment against Defendant, Printed Mint LLC, granting Plaintiff possession of the Equipment, compelling Printed Mint LLC to surrender the Equipment, money damages for Printed Mint LLC's wrongful detention of the Equipment including attorney's fees and collection costs, and any other relief this court deems just and reasonable.

Respectfully submitted,

By: _/s/ Brian Gipson_
**Brian Gipson, Esq.**
Attorney for Plaintiff

Ashen Law Group
Brian Gipson, Esq.
217 N. Jefferson St., Suite 601
Chicago, Illinois 60661
P) 312-655-0800
F) 312-655-0801
bgipson@ashenlaw.com
ARDC No. 6335936

# EXHIBIT A



**Old Second**
**National Bank**

Agreement No. **63801063585**

## EQUIPMENT FINANCE AGREEMENT

| LENDER | Old Second National Bank | BORROWER: | Printed Mint LLC |
|---|---|---|---|
| Address | 37 South River Street<br>Aurora, IL 60506 | Address | 1675 W Pinnacle Peak Rd<br>Phoenix, AZ 85027-1443 |
| Quantity | Full Description of Equipment, Including Make, Model and Serial Number | | |
| (1) | One (1) Used OvalJet High Speed Direct to Garment Printer S/N: OJ-3HP/14S-4560-#017 with Caldera Software and Seven (7) OvalJet Small Size Pallets, including all software, attachment and accessories (collectively "Equipment"). | | |

| TOTAL FINANCED AMOUNT | PAYMENT SCHEDULE | ADVANCED PAYMENT(S)<br>(Required to accompany the EFA agreement)<br>**Total: $500.00** |
|---|---|---|
| $551,233.27 | 3 installments of $0.00 payable monthly followed by 57 installments of $11,451.89 payable monthly | First: $0.00<br>Last  $0.00        Doc Fee: $500.00 |
| **DOCUMENT PREPARED DATE**<br>9/22/2022 | **INITIAL PAYMENT DUE DATE** (not including any advance payments): 11/1/2022 | |
| Equipment Location: (if differs from Borrower billing address): | | |

Borrower and **Old Second National Bank** ("Lender") agree that Lender will finance the above-described personal property (collectively and including replacements, the "Equipment", and individually an "Item") under the terms of this equipment finance agreement ("Agreement") which are set forth.

1. **SECURITY INTEREST.** As security for the payment as and when due of the indebtedness of Borrower to Lender hereunder and the performance as and when due of all other obligations of Borrower, any Guarantor hereunder, or of any affiliated party of the Borrower and Guarantor(s) ("Related Party" or "Related Parties"), to Lender hereunder and under any other agreement under which Borrower now or hereafter has obligations to Lender, Borrower hereby grants to Lender a first priority, security interest in the items of Equipment described either above or on the attached Exhibit "A" and all replacements substitutions and exchanges therefore and thereof and accessions thereto and any and all insurance and/or other proceeds thereof (the "Collateral"). After Borrower signs this Equipment Finance Agreement, Borrower authorizes Lender to insert any missing information or change any inaccurate information (such as the model year of the Equipment or its serial number or VIN) into this Equipment description. Borrower agrees that with respect to the Collateral Lender shall have all of the rights and remedies of a secured party under the Uniform Commercial Code (the "UCC"). Borrower hereby authorizes Lender to file UCC statements describing the Collateral. Without Lender's prior written consent, Borrower agrees not to file any corrective or termination statements or partial releases with respect to any UCC statements filed by Lender pursuant to this Agreement.

2. **PAYMENTS.** Borrower will repay the Total Finance Amount stated above in the number of installments, with the frequency and in the amount shown above. The "Commencement Date" of the Agreement shall be at the time of funding. The first payment shall be due on the Commencement Date if it is set forth above that the payment is an "Advanced Payment", otherwise payments will be made in arrears beginning on the Initial Payment Due Date. Subsequent payments shall be due on the same day of each period set forth on the Initial Payment Due Date, and continue thereafter until all sums due and owing under the Agreement are fully paid, whether or not an invoice is rendered. The Borrower may have an irregular last payment in order to pay the full remaining balance due under the Agreement, including but not limited to payment of principal, interest, late charges, legal expenses, or any other amounts due and owing the Lender under the Agreement. Any other amounts due by or on behalf of Borrower hereunder are payable upon Borrower's receipt of an invoice for any such amount. Borrower shall pay Lender amounts due under this Agreement at Lender's address shown above or as Lender may otherwise notify Borrower. If there is a default, payments may be applied to Borrower's obligations at Lender's sole and absolute discretion. Borrower authorizes Lender to adjust the amount of each monthly payment by up to 10% if the Total Financed Amount (which represents the amount Lender has paid the vendor, manufacturer and/or other supplier (collectively "Vendor") on behalf of Borrower for the Equipment) differs from the amount of the Vendor's final invoice for the Equipment.

3. **LOCATION; INSPECTION; USE.** Borrower will keep, or permanently garage and not remove from such location for more than 30 days or from the United States for any period, each Item in Borrower's possession and control at the Equipment Location or such other location to which Lender may consent in writing. Upon request, Borrower will advise Lender as to the exact location of an Item. Lender may inspect an Item during normal business hours, and Borrower will ensure Lender's access for such purpose. Each Item will be operated carefully and properly in compliance with all applicable governmental, insurance and manufacturer's warranty requirements and all manufacturers' instructions.

4. **MAINTENANCE; ALTERATIONS.** Borrower will maintain each Item in good condition and repair and as specified in such requirements. Borrower will cause each Item of a type generally covered by a service contract to be covered under a contract providing sufficient coverage issued by a competent servicing entity. Borrower will not make any alterations or additions to an Item which detracts from its economic value or functional utility except as stated herein. Alterations or additions not readily removable or made to comply with governmental requirements will be deemed accessions to the Item.

5. **LOSS AND DAMAGE; STIPULATED VALUE.** Borrower will bear all risk of loss, theft, destruction or requisition of or damage to an Item ("Casualty Occurrence"). Borrower will give Lender prompt notice of a Casualty Occurrence and will then repair the Item; provided, if Lender decides the Item is lost, stolen, destroyed or damaged beyond repair or is requisitioned or suffers a constructive loss under an insurance policy carried hereunder, Borrower shall pay Lender the "Stipulated Value" equal to (a) any amounts due Lender from Borrower at the time of the payment; (b) the remaining payments as to the Item; and (c) a Prepayment Premium as defined in Section 21 herein. Upon such payment Lender's security interest will terminate as to the Item.

6. **TITLING; REGISTRATION.** Each Item subject to title registration laws will at all times be titled and/or registered by Borrower in such a manner and jurisdictions as Lender directs. Borrower will promptly notify Lender of any necessary or advisable retitling and/or re-registration of an Item in a different jurisdiction.

7. **TAXES.** Borrower will make all filings and pay all taxes and other governmental assessments relative to the Equipment as required by law. Borrower will pay or reimburse Lender for any other taxes and other governmental assessments other than Lender's net income taxes related to the payments due under or otherwise related to this Agreement. Returns in connection with these latter matters will be filed by Lender or Borrower as Lender specifies.

8. **INSURANCE.** Borrower will maintain all risk insurance on the Equipment for not less than its full replacement value naming Lender as Loss Payee. Lender may require Borrower to maintain combined public liability and property damage insurance with a single limit of not less than $500,000 per occurrence, or such other amount as Lender may require on notice to Borrower, naming Lender as an Additional Insured. All required insurance must be in a form and with companies approved by Lender, must name Borrower as a Named Insured, must provide at least ten (10) days advance written notice to Lender of change or cancellation, must provide breach of warranty protection, where relevant, and must provide that the coverage is "primary." Insurance proceeds, at Lender's option, will be applied to (a) the repair of applicable Items, (b) payment of the Stipulated Value and/or (c) payment of other obligations to Lender. Any excess will belong to Borrower. Borrower appoints Lender as Borrower's attorney-in-fact to do all things necessary or advisable to secure payments under any policy contemplated hereby on account of a Casualty Occurrence. Borrower will cause Lender to receive evidence reasonably requested by Lender of the coverage required above.

9. **LENDER'S PAYMENT.** If Borrower fails to perform any obligation hereunder, Lender may perform the obligation, and Borrower will reimburse Lender's related costs.

10. **INDEMNITY.** Borrower will indemnify, defend and hold harmless Lender against any liabilities, losses, claims, actions and expenses, including court costs and legal expenses, incurred by Lender relating to this Agreement or the Equipment, including claims of latent or other defects, strict liability claims (whether in either case relating to an event while Lender has a security interest therein) and claims for patent, trademark or copyright infringement. Each party will give the other notice of any covered event promptly after learning thereof.

11. **DEFAULT.** The occurrence of any one of the following will constitute a default by the Borrower of this Agreement: (a) failure to pay or perform any of Borrower's obligations under this Agreement within ten (10) days from the due date of payment or performance; (b) Borrower fails to perform any other obligation hereunder or under any other agreement between Lender and Borrower or Lender and any Related Party; (c) Borrower dies or is declared legally incompetent, if an individual; (d) a petition is filed by or against Borrower under the Bankruptcy Act or under any other law providing relief for Borrowers; (e) Borrower makes an assignment for the benefit of creditors, a receiver or trustee is appointed for Borrower, a proceeding contemplating winding up of Borrower's affairs is instituted, Borrower ceases business affairs or Borrower makes an abnormal transfer of a material portion of Borrower's assets; (f) an event described in (c), (d) or (e) occurs as to a guarantor of Borrower's obligations hereunder; (g) there is a material misrepresentation to Lender by Borrower or a guarantor in connection with this Agreement or (h) any representation or warranty made by Borrower shall prove to be false or misleading in any material respect.

12. **REMEDIES.** If the Agreement is in default, Lender may, at its option, do any one or more of the following: (a) declare all sums due and payable, whereupon the unpaid principal and accrued interest shall become immediately due and payable; (b) use self-help and other lawful remedies to take possession of any Items; (c) sell or otherwise dispose of any Items in a manner which is commercially reasonable; (d) recover from Borrower all amounts then due and owing hereunder less the net sales price (net of all Lender's costs and expenses of sale) of any Items Lender has repossessed and sold; or (e) utilize any other remedy available to Lender under the Uniform Commercial Code or otherwise at law or in equity. All remedies are cumulative and may be exercised concurrently or separately from time to time. Borrower will also pay Lender all costs and expenses not offset against the proceeds of sale of any Equipment incurred by Lender in enforcing this Agreement, including those incurred by using Lender's salaried employees and those prior to filing of an action or in connection with a dismissed action. Any waiver by Lender of a provision of this Agreement must be in writing, and forbearance by Lender will not constitute a waiver. Post-default amounts will bear interest at 18% per annum or at such lesser default rate as set by law until paid.

13. **REPRESENTATIONS AND WARRANTIES OF BORROWER.** Borrower hereby represents and warrants that: (a) Borrower has good title to the Equipment, free of all liens, claims, security interests and encumbrances except those of Lender and the security interest granted by Borrower to Lender constitutes a valid first priority lien and security interest in the Equipment; (b) Borrower is not in default under any indenture, loan agreement, mortgage, deed of trust or other similar Agreement relating to the borrowing of monies to which Borrower is party, or by which Borrower's assets may be bound; (c) there are not actions or proceeding which are pending or threatened in any court or before any governmental agency against Borrower, its assets, or the Equipment which may materially adversely affect Borrower or the Equipment; (d) the execution, delivery and performance of this Agreement and all related instruments and documents (i) have been duly authorized by all necessary action on the part of Borrower, (ii) do not require the approval of any stockholder, partner, manager, trustee, or holder of any obligations of Debtor except such as have been duly obtained, and (iii) do not and will not contravene any law, governmental rule, regulation or order now binding on Borrower, or contravene the operating agreement, charter or by-laws of Debtor, or constitute a default under, or result in the creation of any lien or encumbrance upon the property of Debtor under, any indenture, mortgage, contract or other agreement to which Debtor is a party or by which it or its property is bound; (e) the financial statements of Debtor (copies of which have been furnished to Creditor) have been prepared in accordance with generally accepted accounting principles consistently applied ("GAAP"), and fairly present Debtor's or Guarantor's, if applicable, financial condition and the results of its operations as of the date of and for the period covered by such statements, and since the date of such statements there has been no material adverse change in such conditions or operations; (f) Debtor does not conduct business under a trade, assumed or fictitious name, except as set forth in Schedule 1; (g) this Agreement creates a valid first priority security interest in the Collateral securing payment and performance of the Secured Obligations and all filings and other action necessary to perfect such security interest have been taken or shall be promptly taken; (h) Debtor is not in violation of any Applicable Law, the violation of which would have a material adverse effect on the conduct of its business, and Debtor has obtained any and all licenses, permits, franchises or other governmental authorizations necessary for the ownership of its properties and the conduct of its business; and (i) all Equipment will be used by Borrower solely for business purposes.

14. **ASSIGNMENT.** Without the prior written consent of Lender, Borrower will not lease, transfer an interest in or allow a lien against any Item or transfer any obligation under this Agreement except a lien in an Item created by Lender. Borrower's obligations are not assignable by operation of law. All of Lender's rights under this Agreement and interest in the Equipment may be disposed of without notice to Borrower. Borrower will acknowledge receipt of any notice of assignment in writing and will pay any assigned amounts as directed in the notice. If Lender assigns this Agreement or any interest herein, Borrower will not assert against the assignee any claim or defense it may have against Lender, and Borrower will pursue any rights on account thereof solely against Lender personally. No assignee will be obligated to perform any obligation of Lender under this Agreement unless assumed by the assignee. Subject to the foregoing, this Agreement is for the benefit of, and binds, the heirs, legatees, personal representatives, successors and assigns of the parties.

15. **PERSONAL PROPERTY**. Borrower will mark the Equipment or Equipment Location at Lender's request to indicate Lender's security interest in the Equipment. Each Item will remain personally despite attachment to realty. Borrower will obtain and deliver to Lender, upon Lender's request, real property waivers in form satisfactory to Lender from all persons claiming an interest in the real property on which an Item is or is to be located.

16. **ADDITIONAL DOCUMENTS**. Borrower will obtain and deliver to Lender such documents as Lender requests to protect its interest in this Agreement and the Equipment, including financing statements and fixture filings, both of which Borrower hereby alternatively authorizes Lender to sign on Borrower's behalf. Borrower will reimburse Lender for all of Lender's search, filing and appraisal fees and other costs paid third parties in connection with this Agreement. Borrower will furnish Lender such financial data or information relative to this Agreement or the Equipment as Lender may from time to time reasonably request.

17. **LATE PAYMENT**. If Borrower fails to pay an amount hereunder <u>within 10 days of when due</u>, Borrower will pay Lender (a) **a 5% late charge; (b)** amounts Lender pays others in connection with collection of the amount; and (c) Lender's standard returned check charge, if relevant.

18. **DEPOSIT**. Any deposit Borrower furnishes in connection with this Agreement will not bear interest and may be applied by Lender to any obligations of Borrower to Lender which are in default. When Borrower has satisfied all of Borrower's obligations hereunder, Lender will return any remaining balance of the deposit to Borrower.

19. **GENERAL**. This Agreement contains the entire Agreement between Lender and Borrower concerning the financing of the Equipment and may he amended only by a written Agreement signed by the party to be charged. Notices hereunder must be in writing and mailed with appropriate U.S. First Class Mail postage prepaid to the party involved at its respective address set forth above or at such other address as such party may provide the other on notice. Notices to Borrower will be effective upon deposit and to Lender upon receipt. Each party will promptly notify the other of any change in address. The singular includes the plural and the word "Lender" includes all assignees of Lender. The liability of co-Borrowers is joint and several. Paragraph titles are not an aid in interpretation. This document and other related documents may be executed in any number of counterparts and each such counterpart shall be deemed an original, but all such counterparts together shall constitute one and the same document.

20. **GOVERNING LAW; VENUE, JURY TRIAL WAIVER..** This Agreement, and any disputes arising from or relating to this agreement will be governed by and construed in accordance with the laws of the state of Illinois without regard for its conflict of law provisions. All disputes or claims between the parties to this Agreement shall be submitted to the exclusive jurisdiction of the state and federal courts of the state of Illinois with venue in the county of Kane. The parties to this agreement expressly waive any defense of lack of personal jurisdiction or improper venue in any such court. The parties expressly waive any right to trial by jury.

21. **PREPAYMENT**. Borrower may not prepay, in whole or in part, the outstanding principal balance hereunder; <u>provided, however,</u> that Borrower may prepay, in whole but not in part, the outstanding principal balance hereunder by paying to Lender such principal balance outstanding, together with all accrued and unpaid interest thereon, plus a prepayment premium ("Prepayment Premium") equal to 1% of such principal balance outstanding for each year or portion of such year remaining from the Initial Payment Due Date through the date the final installment payment is due under the Agreement ("Prepayment Year"). Prepayment Year shall be defined as the twelve (12) month period or any portion therein, between the anniversary date of the Initial Payment Due Date through the subsequent anniversary date of the Initial Payment Due Date. By way of example, if there remains 30 payments due under the Agreement, the Prepayment Premium would be equal to 3%. A Prepayment Premium shall apply to and shall be due and payable by Borrower upon i) any casualty loss to the Equipment under Section 5 herein resulting in a reduction of or full payment of the principal balance outstanding whether the casualty loss is a total or partial loss, with such Prepayment Premium to be calculated as of the date of the loss; ii) a declaration of acceleration of the balance due under the Agreement, with such Prepayment Premium to be calculated as of the date of the declaration of acceleration; or iii) a Default under section 11 herein, which shall be calculated upon the exercise of remedies provided for in Section 12 herein.

22. **NO AGENCY**. BORROWER ACKNOWLEDGES THAT NO SUPPLIER NOR ANY FINANCIAL INTERMEDIARY NOR ANY AGENT OR EITHER IS AN AGENT OF LENDER, THAT NONE OF SUCH PARTIES IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS AGREEMENT AND THAT NO REPRESENTATION AS TO THE EQUIPMENT OR ANY OTHER MATTER BY ANY SUCH PARTY IS BINDING UPON LENDER.

23. **FINANCING**. THIS AGREEMENT IS SOLELY A FINANCING AGREEMENT. LENDER HAS HAD NO INVOLVEMENT IN THE SELECTION OF THE VENDOR OR SELECTION AND PURCHASE OF ANY ITEM AND HAS MADE NO AGREEMENT, REPRESENTATION OR WARRANTY AS TO ANY ITEM.

24. **ENTIRE AGREEMENT; AMENDMENTS:** COUNTERPARTS; CHATTEL PAPER; ENFORCEABILITY. This Agreement constitutes the entire agreement for the subject matter hereunder and supersedes all prior oral and written agreements. No modification or amendment of this Agreement shall be binding unless executed in writing by both parties. Borrower agrees to promptly execute and deliver any further documents and take further action as Lender may request to fulfill the purpose of this Agreement. This Agreement may be executed in one or more counterparts, each of which is deemed an original and which together constitutes one Agreement. The original Agreement shall constitute the original chattel paper for purposes of the UCC. If any term hereunder is determined by a court, agency or other party with authority to be invalid or unenforceable, such finding shall not affect any remaining terms of this Agreement.

25. **NOTICES: ELECTRONIC DOCUMENTS**. All notices hereunder must be sent by certified mail or recognized overnight delivery service, postage prepaid, return receipt requested to you at the address stated above or an alternative address provided in writing. This Agreement, any signature page or counterpart thereto, signed and transmitted by facsimile machine, telecopier or other electronic means {including via transmittal of a "pdf" file} shall be deemed an original document that is valid, binding and enforceable. The signature of any person thereto shall be considered an original signature and the document transmitted has the same binding effect as an original signature on an original document. At Lender's request, any facsimile, telecopy or other electronic document shall be provided with a "wet ink" signature and/or manually transmitted in original form by the person{s} who executed the facsimile, telecopy or other electronic document. The parties hereby consent to using such electronic signature{s} and/or electronic transmission of document{s} and intend to be legally bound thereby. No party may raise use of a facsimile, telecopier or other electronic means of delivery, or the fact any signature is electronic, as a defense to enforcement of this Agreement.

26. **USA PATRIOT ACT.** THE LENDER HEREBY NOTIFIES THE BORROWER THAT PURSUANT TO THE REQUIREMENTS OF THE USA PATRIOT ACT (TITLE III OF PUB. L. 107-56 (SIGNED INTO LAW OCTOBER 26, 2001)) (THE "ACT"), IT IS REQUIRED TO OBTAIN, VERIFY, AND RECORD INFORMATION THAT IDENTIFIES THE MAKER, WHICH INFORMATION INCLUDES THE NAME AND ADDRESS OF THE MAKER AND OTHER INFORMATION THAT WILL ALLOW THE LENDER TO IDENTIFY THE BORROWER IN ACCORDANCE WITH THE ACT. If the Borrower is an individual, the Borrower shall not become a Blocked Person or own or hold, directly or indirectly, any ownership interest in any Blocked Person. If the Borrower is a business entity, the Borrower will not allow a Blocked Person to have an ownership interest in or control of Borrower. "Blocked Person" means any person or entity that is now or at any time (A) on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list, or (B) whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed  by law, including any executive order of any branch or department of the United States government or (C) otherwise designated by the United States or any regulator having jurisdiction or regulatory oversight over Lender, to be a person with whom Lender is not permitted to extend credit to or with regard to whom, a guarantor relationship may result in penalties against Lender or limitations on a Lender's ability to enforce a transaction.

27. **TRANSFER OF ACCOUNTS.** Borrower acknowledges that a material consideration in entering into this Agreement  with Lender is the existing business relationship that Borrower and Lender has with Borrower, and that notwithstanding said business relationship, Lender would not have entered into this Agreement with Borrower. Borrower acknowledges and agrees that in the event Borrower, or Borrower's principals, successors and/or assigns, or any guarantor of this Agreement, terminates any part of its business relationship with Lender or Lender's affiliates, or transfers any of its finances and/or banking business to another financial institution, including, but not limited to, the transfer of any deposit accounts, loans, or mortgages, then Lender shall have the absolute right to accelerate and declare the principal balance outstanding, together with all accrued and unpaid interest thereon, plus a Prepayment Premium as defined in Section 21 above.

28. **CROSS-COLLATERALIZATION.**  Borrower grants Lender a security interest in the Collateral (separate and distinct from and subordinate only to the security interest granted to Lender herein) to secure  the payment and performance of all now existing or hereafter arising debts, liabilities and obligations of Borrower of every kind and character, whether direct, indirect, absolute, contingent, primary, secondary, or otherwise to Lender, whether under this Agreement or any other agreement, and whether due directly or acquired by assignment, transfer, renewal, extension, refinancing or other means ("Liabilities"); provided, however, that such cross-collateralization shall only benefit Lender and those of Lender's assignees who have been assigned both this Agreement and such other debts, liabilities  or obligations

By execution hereof Borrower requests Lender to advance the "Total Financed Amount" shown above to the parties whom Borrower has specified in a separate Disbursement Instruction; subject to Lender's right to make the applicable portion of the advance to any party which Lender concludes has a security interest in an Item. Execution hereof by a duly authorized officer of Lender indicates Lender's acceptance of such offer. Borrower warrants that Borrower will use the Equipment solely for commercial or business purposes.

Borrower recognizes that Lender will check Borrower's credit references and history and advise others as to Lender's experience with Borrower and consents thereto. Borrower certifies and warrants that the financial data and other information which Borrower has submitted or when requested to submit to Lender, is or will be a true and complete statement of the matters covered.

| LENDER AND SECURED PARTY | | BORROWER | |
|---|---|---|---|
| **Company Name:**  Old Second National Bank | | **Company Name:**  Printed Mint LLC | |
| **Print Name:**  Tim Woodcock | | **Print Name:**  Christopher J. Ellis | |
| **Title:**  Managing Director | | **Title:**  Manager | |
| **Authorized Signature:** | | **Authorized Signature:** | |
| **Date:** 9/22/2022 | | **Date:** 9/22/2022 | |
| **BORROWER** | | **BORROWER** | |
| **Company Name:** | | **Company Name:**  Printed Mint LLC | |
| **Print Name:** | | **Print Name:**  Mary J. Zychowski | |
| **Title:** | | **Title:**  Manager | |
| **Authorized Signature:** | | **Authorized Signature:** | |
| **Date:** | | **Date:** 9/22/2022 | |



Agreement No.  63801063585

## EXHIBIT "A" TO EQUIPMENT FINANCE AGREEMENT

| LENDER: | Old Second National Bank | BORROWER: | Printed Mint LLC |
|---|---|---|---|
| Address: | 37 South River Street<br>Aurora, IL 60506 | Address: | 1675 W Pinnacle Peak Rd<br>Phoenix, AZ 85027-1443 |

| QUANTITY | EQUIPMENT DESCRIPTION |
|---|---|
| (1) | One (1) Used OvalJet High Speed Direct to Garment Printer  S/N: OJ-3HP/14S-4560-#017 with Caldera Software and Seven (7) OvalJet Small Size Pallets, including all software, attachment and accessories (collectively "Equipment"). |

Together with all parts, attachments, accessions, substitutions, repairs and improvements and replacements thereto, and any and all cash and non-cash proceeds thereof, including without limitation, insurance proceeds.

After Borrower signs this Equipment Finance Agreement, Borrower authorizes Lender to insert any missing information or change any inaccurate information (such as the model year of the Equipment or its serial number or VIN) into this Equipment description

This Exhibit "A" is attached to and a part of Equipment Finance Agreement and constitutes a true and accurate description of the equipment.

Borrower has executed this exhibit as of 9/22/2022

BORROWER:

Printed Mint LLC

By: _____
Name:  Christopher J. Ellis
Title:  Manager

By: _____
Name:  Mary J. Zychowski
Title:  Manager

# EXHIBIT B



## DELIVERY AND ACCEPTANCE RECEIPT OF
## EQUIPMENT BY BORROWER

| LENDER: | Old Second National Bank | BORROWER: | Printed Mint LLC |
|---|---|---|---|
| Address: | 37 South River Street<br>Aurora, IL 60506 | Address: | 1675 W Pinnacle Peak Rd<br>Phoenix, AZ 85027-1443 |

**EQUIPMENT FINANCE AGREEMENT NO.  63801063585**          **DATED: 9/22/2022**

**EQUIPMENT DESCRIPTION:** One (1) Used OvalJet High Speed Direct to Garment Printer  S/N: OJ-3HP/14S-4560-#017 with Caldera Software and Seven (7) OvalJet Small Size Pallets, including all software, attachments and accessories (collectively "Equipment").

We hereby acknowledge and agree that the above Equipment granted as collateral for the above named Equipment Finance Agreement ("Agreement") was selected solely by us and not by Old Second National Bank ("Lender").

We hereby acknowledge that as of the date indicated below, the Equipment has been received in good condition and repair, has been properly installed and is operating satisfactorily. We hereby accept the Equipment as satisfactory in all respects for the purposes of said Agreement, and we acknowledge that the Equipment has not been delivered, installed or accepted on a trial basis.

We will make all payments to Lender or its order in accordance with the Agreement. We agree that any rights we may have against the vendor, supplier or manufacturer of the Equipment will not be asserted as an abatement, set-off, counterclaim, defense, or any deduction whatsoever against our obligations under the Agreement or any agreement owing to Lender or any affiliate of Lender.

By signature below, we request that Old Second National Bank make payment to the vendor, manufacturer, or suppler under the terms and conditions of the Agreement, and that we are hereby irrevocably bound to perform any and all obligations under the Agreement.

We agree and make known our intention that a photocopy, electronically executed or transmitted facsimile, or other reproduction of this Delivery and Acceptance Receipt ("D&A") is the binding and effective record hereof whether or not an ink signed copy is also received by Lender and agree that this D&A shall constitute an original document and shall be legally admissible under the best evidence rule and binding on and enforceable against us.

**WE ACKNOWLEDGE AND AGREE THAT LENDER HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, DIRECTLY OR INDIRECTLY, EXPRESS OR IMPLIED, AS TO THE SUIT ABILITY OF THE EQUIPMENT, IT'S DURABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS MERCHANT ABILITY, ITS CONDITION, AND/OR IT'S QUALITY.**

**DATE OF ACCEPTANCE:**  *09-23-2022*

**BORROWER: Printed Mint LLC**

**By:** _____
Name:   Christopher J. Ellis
Title:   Manager

**By:** _____
Name:   Mary J. Zychowski
Title:   Manager

**IMPORTANT:** THIS DOCUMENT HAS LEGAL AND FINANCIAL CONSEQUENCES TO YOU. DO NOT SIGN THIS DOCUMENT UNTIL YOU HAVE ACTUALLY RECEIVED **ALL** OF THE EQUIPMENT AND ARE COMPLETELY SATISFIED WITH

# EXHIBIT C


**Old Second**
National Bank

# GUARANTY OF EQUIPMENT FINANCE AGREEMENT

The "Agreement": Equipment Finance Agreement # 63801063585          Date: 9/22/2022

**Borrower Name: Printed Mint LLC**

The undersigned ("Guarantor") hereby unconditionally and absolutely guarantees the full and prompt payment and performance when due (at maturity, by acceleration, on demand or otherwise) of all principal, interest, payments, rents, monies, debts, liabilities, agreements, duties and other obligations of every type and description of Borrower to Old Second National Bank. ("Lender"), whether direct, indirect, absolute, contingent, due, to become due, secured, unsecured, primary, secondary, joint, several, joint and several, now existing or hereafter arising, acquired or owed under or in respect of the Agreement and the extensions of credit made in connection therewith, including without limitation under any agreement or writing evidencing, securing or otherwise executed in connection with the Agreement, and all extensions, renewals, refinancing's, amendments, modifications, restatements, supplements and addenda thereto (the "Obligations").

Guarantor further agrees to pay Lender, on demand, in immediately available funds: (a) the amount of each Obligation not paid when due, without requiring that Lender first attempt to collect any Obligations from Borrower or any other obligor therefor ("Co-obligor") or resort to any security for the Obligations ("Collateral"); and (b) all costs and expenses (including court costs, legal fees and expenses) incurred by Lender in connection with the Obligations, this Guaranty and the enforcement of either, together with interest thereon from the time any amount becomes due until paid, at 18% per annum or, if less, the maximum rate permitted by applicable law. Should Guarantor die, sell or transfer all or substantially all Guarantor's non-exempt assets, or seek to have a receiver appointed for Guarantor's assets, file or have filed against Guarantor a petition for relief under the U. S. Bankruptcy Code, or any successor or similar state or federal law, all Obligations will be deemed immediately due and payable and Guarantor's obligations hereunder will automatically become immediately due and payable, without demand or notice of any kind. Guarantor's liability with respect to the Obligations is unlimited and continuing until all Obligations are indefeasibly paid in full. Guarantor expressly waives any right to revoke or terminate this Guaranty. This Guaranty shall continue in effect or be reinstated if any payment or value received by Lender is rescinded, set aside, recovered or returned for any reason (including without limitation in a bankruptcy proceeding), and the Obligation shall for the purposes hereof be deemed to have continued in existence notwithstanding application of such payment or value to such Obligation, all as though payment or value had not been made or received. Lender may require payments by Guarantor hereunder on one or more occasions.

Guarantor agrees that the Obligations will be paid and performed strictly in accordance with their respective terms regardless of any applicable law, regulation or order affecting any of Lender's rights with respect thereto, and regardless of enforceability of any Obligations against Borrower for any reason, including lack of legal existence, lack of authority, as a result of bankruptcy, insolvency or reorganization, or due to any defenses of Borrower. Guarantor waives presentment, demand, protest, notice of acceptance, notice of the creation or existence of any Obligations and all other notices of any kind, all defenses which may be available by virtue of any valuation, stay, moratorium law or other similar law now or hereafter in effect, any right to require the marshaling of assets, and all defenses available to a surety, guarantor or accommodation co-obligor. Without limiting the generality of the foregoing, Guarantor's obligations hereunder shall not be released, discharged or otherwise affected by any act or omission, regardless of whether it may vary Guarantor's risk in any manner or to any extent or otherwise would operate as a release or discharge of Guarantor, all of which may be done without notice to or the consent of Guarantor, including without limitation (i) any waiver, forbearance, or failure to assert any claim or demand or enforce any right or remedy against Borrower, any Co-obligor or any Collateral; (ii) any extensions, increases or renewals of any Obligation, for any period of time; (iii) any rescissions, amendments or modifications of any terms of any Obligations or of Collateral, including additional extensions of credit under the Agreement; (iv) the substitution or release of Borrower or any Co-obligor; (v) the adequacy of, or failure to obtain, perfect or preserve, any rights in or impairment of or against, or substitution, exchange, surrender, release, loss or destruction of, any Collateral or other support for any Obligations; or (vi) the application or failure to apply in any particular manner any payments or credits. Guarantor will remain liable for any deficiency following any foreclosure of any Collateral regardless of any discharge of Borrower.

Guarantor is giving this Guaranty in good faith for adequate consideration and reasonably equivalent value, and without any intent to hinder, delay or defraud Guarantor's creditors. The execution, delivery and performance of this Guaranty do not and will not violate any provision of any indenture, contract, agreement, instrument, law, rule, regulation or order to or by which Guarantor is a party, subject or bound.

Guarantor will provide Lender on request Guarantor's most recent financial statements and other information, in such form as Lender reasonably shall require. Guarantor will do all things and execute all documents as required by Lender to give full effect to this Guaranty and to preserve Lender's rights and powers hereunder. Guarantor takes full responsibility for being and keeping informed of Borrower's financial condition and all other circumstances bearing on Guarantor's risk hereunder. Lender shall have no duty to advise Guarantor of information known to it regarding Borrower or Borrower's financial condition.

Until all Obligations shall have been satisfied, Guarantor (a) waives all rights of subrogation, contribution, indemnity and reimbursement against Borrower, any Co-obligor and any Collateral, and (b) will not demand, sue for or otherwise attempt to collect any indebtedness of Borrower to Guarantor.

This Guaranty shall be binding on Guarantor, and Guarantor's heirs, representatives, successors and assigns, and shall inure to the benefit of Lender, its successors and assigns. Notwithstanding anything herein, no assignment or transfer by Guarantor will relieve Guarantor of any liabilities or obligations hereunder.

The Lender may, without any notice whatsoever to any one, sell, assign or transfer all of the Obligations, or any part thereof, or grant participations therein, and in that event each and every immediate and successive assignee, transferee, or holder of or participant in all or any part of the Obligations, shall have the right to enforce this guaranty, by suit or otherwise, for the benefit of such assignee, transferee, holder or participant, as fully as if such assignee, transferee, holder or participant were herein by name specifically given such rights, powers and benefits; but the Lender shall have an unimpaired right to enforce this guaranty for the benefit of the Lender or any such participant, as to so much of the Obligations that it has not sold, assigned or transferred.

This is a continuing, absolute and unconditional guaranty, and shall remain in full force and effect until written notice of its discontinuance shall be actually received by Lender, and also until any and all of the Obligations created, existing or committed to before receipt of such notice shall be fully paid. In case of the death, incompetency, dissolution, liquidation or insolvency (howsoever evidenced) of, or the institution of bankruptcy or receivership proceedings against the Borrower or the Guarantor, all of the Obligations then existing shall, at the option of the Lender, immediately become due or accrued and payable from the Guarantor. All dividends or other payments received from the Borrower or on account of the Obligations from whatsoever source, shall be taken and applied as payment in gross, and this guaranty shall apply to and secure any ultimate balance that shall remain owing to the Lender.

This Guaranty was documented in the State of Illinois. This Guaranty shall be governed by, and construed in accordance with, the substantive law of the State of Illinois (not including conflicts laws). Guarantor agrees that any suit to enforce this Guaranty may be brought in the federal court sitting in the Northern District of Illinois or any state courts sitting in Cook or DuPage County, Illinois (at the discretion of the Lender) and consents to the exclusive jurisdiction of such courts and to service of process in any such suit being made on Guarantor by mail at the address specified herein. Guarantor hereby waives any objection it may now or hereafter have to the venue of any such suit in any such court or based on forum non conveniens. GUARANTOR, AFTER CONSULTING (OR HAVING HAD AN OPPORTUNITY TO CONSULT) WITH COUNSEL OF GUARANTOR'S CHOICE, KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THIS GUARANTY, OR ANY OBLIGATIONS, INCLUDING ANY LITIGATION REGARDING ENFORCEMENT OF THIS GUARANTY OR ANY OBLIGATIONS.

This Guaranty constitutes Guarantor's entire agreement relating to the matters herein. No amendment or waiver of any provision hereof nor consent to any departure by Guarantor therefrom is effective unless in writing, signed by Lender. No failure or delay on Lender's part to exercise any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. All of Lender's rights and remedies are cumulative and not exclusive of any other remedies at law or by any other agreement. This Guaranty is in addition to, not in replacement of or substitution for, any other guaranty of the Obligations or any other guaranty of Guarantor held by Lender. The invalidity or unenforceability of any provisions hereof will not affect the validity or enforceability of any other provisions. If more than one Guarantor has signed this Guaranty, each Guarantor shall be jointly and severally liable hereunder.

Guarantor acknowledges, authorizes and consents to Lender and its agents obtaining consumer credit reports and other financial and credit information, and making other credit inquiries about Guarantor, both in connection with Borrower's application and from time to time hereafter.

If the Guarantor is an individual, the Guarantor shall not become a Blocked Person or own or hold, directly or indirectly, any ownership interest in any Blocked Person. If the Guarantor is a business entity, the Guarantor will not allow a Blocked Person to have an ownership interest in or control of Guarantor. "Blocked Person" means any person or entity that is now or at any time (A) on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list, or (B) whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law, including any executive order of any branch or department of the United States government or (C) otherwise designated by the United States or any regulator having jurisdiction or regulatory oversight over Lender, to be a person with whom Lender is not permitted to extend credit to or with regard to whom, a guarantor relationship may result in penalties against Lender or limitations on a Lender's ability to enforce a transaction.

Lender may, in its sole discretion, accept a photocopy, electronically executed or transmitted facsimile or other reproduction of this document (a "Counterpart") as the binding and effective record hereof whether or not an ink signed copy is also received by Lender from Guarantor. Guarantor agrees that such Counterpart shall constitute an original document and shall be legally admissible under the best evidence rule and binding on and enforceable against Guarantor. Without limiting or modifying the foregoing, Guarantor will deliver to Lender, promptly on request, the originally executed Counterpart of this Guaranty or any other agreement.

**Guarantor: Christopher J. Ellis**

<mark>Signature:</mark> _____ , an Individual          Date: 9/22/2022

Name: Christopher J. Ellis
Guarantor Address: 2617 W Pumpkin Ridge Dr., Anthem, AZ 85086-3027

# EXHIBIT D



**Old Second**
National Bank

# GUARANTY OF EQUIPMENT FINANCE AGREEMENT

The "Agreement": Equipment Finance Agreement # 63801063585          Date: 9/22/2022

**Borrower Name: Printed Mint LLC**

The undersigned ("Guarantor") hereby unconditionally and absolutely guarantees the full and prompt payment and performance when due (at maturity, by acceleration, on demand or otherwise) of all principal, interest, payments, rents, monies, debts, liabilities, agreements, duties and other obligations of every type and description of Borrower to Old Second National Bank. ("Lender"), whether direct, indirect, absolute, contingent, due, to become due, secured, unsecured, primary, secondary, joint, several, joint and several, now existing or hereafter arising, acquired or owed under or in respect of the Agreement and the extensions of credit made in connection therewith, including without limitation under any agreement or writing evidencing, securing or otherwise executed in connection with the Agreement, and all extensions, renewals, refinancing's, amendments, modifications, restatements, supplements and addenda thereto (the "Obligations").

Guarantor further agrees to pay Lender, on demand, in immediately available funds: (a) the amount of each Obligation not paid when due, without requiring that Lender first attempt to collect any Obligations from Borrower or any other obligor therefor ("Co-obligor") or resort to any security for the Obligations ("Collateral"); and (b) all costs and expenses (including court costs, legal fees and expenses) incurred by Lender in connection with the Obligations, this Guaranty and the enforcement of either, together with interest thereon from the time any amount becomes due until paid, at 18% per annum or, if less, the maximum rate permitted by applicable law. Should Guarantor die, sell or transfer all or substantially all Guarantor's non-exempt assets, have or seek to have a receiver appointed for Guarantor's assets, file or have filed against Guarantor a petition for relief under the U. S. Bankruptcy Code, or any successor or similar state or federal law, all Obligations will be deemed immediately due and payable and Guarantor's obligations hereunder will automatically become immediately due and payable, without demand or notice of any kind. Guarantor's liability with respect to the Obligations is unlimited and continuing until all Obligations are indefeasibly paid in full. Guarantor expressly waives any right to revoke or terminate this Guaranty. This Guaranty shall continue in effect or be reinstated if any payment or value received by Lender is rescinded, set aside, recovered or returned for any reason (including without limitation in a bankruptcy proceeding), and the Obligation shall for the purposes hereof be deemed to have continued in existence notwithstanding application of such payment or value to such Obligation, all as though payment or value had not been made or received. Lender may require payments by Guarantor hereunder on one or more occasions.

Guarantor agrees that the Obligations will be paid and performed strictly in accordance with their respective terms regardless of any applicable law, regulation or order affecting any of Lender's rights with respect thereto, and regardless of enforceability of the Obligations against Borrower for any reason, including lack of legal existence, lack of authority, as a result of bankruptcy, insolvency or reorganization, or due to any defenses of Borrower. Guarantor waives presentment, demand, protest, notice of acceptance, notice of the creation or existence of any Obligations and all other notices of any kind, all defenses which may be available by virtue of any valuation, stay, moratorium law or other similar law now or hereafter in effect, any right to require the marshaling of assets, and all defenses available to a surety, guarantor or accommodation co-obligor. Without limiting the generality of the foregoing, Guarantor's obligations hereunder shall not be released, discharged or otherwise affected by any act or omission, regardless of whether it may vary Guarantor's risk in any manner or to any extent or otherwise would operate as a release or discharge of Guarantor, all of which may be done without resort to or the consent of Guarantor, including without limitation (i) any waiver, forbearance, or failure to assert any claim or demand or enforce any right or remedy against Borrower, any Co-obligor or any Collateral; (ii) any extensions, increases or renewals of any Obligation, for any period of time; (iii) any rescissions, amendments or modifications of any terms of any Obligations or of Collateral, including additional extensions of credit under the Agreement; (iv) the substitution or release of Borrower or any Co-obligor; (v) the adequacy of, or failure to obtain, perfect or preserve, any rights in or impairment of or against, or substitution, exchange, surrender, release, loss or destruction of, any Collateral or other support for any Obligations; or (vi) the application or failure to apply in any particular manner any payments or credits. Guarantor will remain liable for any deficiency following any foreclosure of any Collateral regardless of any discharge of Borrower.

Guarantor is giving this Guaranty in good faith for adequate consideration and reasonably equivalent value, and without any intent to hinder, delay or defraud Guarantor's creditors. The execution, delivery and performance of this Guaranty do not and will not violate any provision of any indenture, contract, agreement, instrument, law, rule, regulation or order to or by which Guarantor is a party, subject or bound.

Guarantor will provide Lender on request Guarantor's most recent financial statements and other information, in such form as Lender reasonably shall require. Guarantor will do all things and execute all documents as required by Lender to give full effect to this Guaranty and to preserve Lender's rights and powers hereunder. Guarantor takes full responsibility for being and keeping informed of Borrower's financial condition and all other circumstances bearing on Guarantor's risk hereunder. Lender shall have no duty to advise Guarantor of information known to it regarding Borrower or Borrower's financial condition.

Until all Obligations shall have been satisfied, Guarantor (a) waives all rights of subrogation, contribution, indemnity and reimbursement against Borrower, any Co-obligor and any Collateral, and (b) will not demand, sue for or otherwise attempt to collect any indebtedness of Borrower to Guarantor.

This Guaranty shall be binding on Guarantor, and Guarantor's heirs, representatives, successors and assigns, and shall inure to the benefit of Lender, its successors and assigns. Notwithstanding anything herein, no assignment or transfer by Guarantor will relieve Guarantor of any liabilities or obligations hereunder.

The Lender may, without any notice whatsoever to any one, sell, assign or transfer all of the Obligations, or any part thereof, or grant participations therein, and in that event each and every immediate and successive assignee, transferee, or holder of or participant in all or any part of the Obligations, shall have the right to enforce this guaranty, by suit or otherwise, for the benefit of such assignee, transferee, holder or participant, as fully as if such assignee, transferee, holder or participant were herein by name specifically given such rights, powers and benefits; but the Lender shall have an unimpaired right to enforce this guaranty for the benefit of the Lender or any such participant, as to so much of the Obligations that it has not sold, assigned or transferred.

This is a continuing, absolute and unconditional guaranty, and shall remain in full force and effect until written notice of its discontinuance shall be actually received by Lender, and also until any and all of the Obligations created, existing or committed to before receipt of such notice shall be fully paid. In case of the death, incompetency, dissolution, liquidation or insolvency (howsoever evidenced) of, or the institution of bankruptcy or receivership proceedings against the Borrower or the Guarantor, all of the Obligations then existing shall, at the option of the Lender, immediately become due or accrued and payable from the Guarantor. All dividends or other payments received from the Borrower or on account of the Obligations from whatsoever source, shall be taken and applied as payment in gross, and this guaranty shall apply to and secure any ultimate balance that shall remain owing to the Lender.

This Guaranty was documented in the State of Illinois. This Guaranty shall be governed by, and construed in accordance with, the substantive law of the State of Illinois (not including conflicts laws). Guarantor agrees that any suit to enforce this Guaranty may be brought in the federal court sitting in the Northern District of Illinois or any state court sitting in Cook or DuPage County, Illinois (at the discretion of the Lender) and consents to the exclusive jurisdiction of such courts and to service of process in any such suit being made on Guarantor by mail at the address specified herein. Guarantor hereby waives any objection it may now or hereafter have to the venue of any such suit in any such court or based on forum non conveniens. GUARANTOR, AFTER CONSULTING (OR HAVING HAD AN OPPORTUNITY TO CONSULT) WITH COUNSEL OF GUARANTOR'S CHOICE, KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THIS GUARANTY, OR ANY OBLIGATIONS, INCLUDING ANY LITIGATION REGARDING ENFORCEMENT OF THIS GUARANTY OR ANY OBLIGATIONS.

This Guaranty constitutes Guarantor's entire agreement relating to the matters herein. No amendment or waiver of any provision hereof nor consent to any departure by Guarantor therefrom is effective unless in writing, signed by Lender. No failure or delay on Lender's part to exercise any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. All of Lender's rights and remedies are cumulative and not exclusive of any other remedies at law or by any other agreement. This Guaranty is in addition to, not in replacement of or substitution for, any other guaranty of the Obligations or any other guaranty of Guarantor held by Lender. The invalidity or unenforceability of any provisions hereof will not affect the validity or enforceability of any other provisions. If more than one Guarantor has signed this Guaranty, each Guarantor shall be jointly and severally liable hereunder.

Guarantor acknowledges, authorizes and consents to Lender and its agents obtaining consumer credit reports and other financial and credit information, and making other credit inquiries about Guarantor, both in connection with Borrower's application and from time to time hereafter.

If the Guarantor is an individual, the Guarantor shall not become a Blocked Person or own or hold, directly or indirectly, any ownership interest in any Blocked Person. If the Guarantor is a business entity, the Guarantor will not allow a Blocked Person to have an ownership interest in or control of Guarantor. "Blocked Person" means any person or entity that is now or at any time (A) on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list, or (B) whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law, including any executive order of any branch or department of the United States government or (C) otherwise designated by the United States or any regulator having jurisdiction or regulatory oversight over Lender, to be a person with whom Lender is not permitted to extend credit to or with regard to whom, a guarantor relationship may result in penalties against Lender or limitations on a Lender's ability to enforce a transaction.

Lender may, in its sole discretion, accept a photocopy, electronically executed or transmitted facsimile or other reproduction of this document (a "Counterpart") as the binding and effective record hereof whether or not an ink signed copy is also received by Lender from Guarantor. Guarantor agrees that such Counterpart shall constitute an original document and shall be legally admissible under the best evidence rule and binding on and enforceable against Guarantor. Without limiting or modifying the foregoing, Guarantor will deliver to Lender, promptly on request, the originally executed Counterpart of this Guaranty or any other agreement.

Guarantor: Mary J. Zychowski

Signature: _____ , an Individual                Date: 9/22/2022

Name: Mary J. Zychowski
Guarantor Address:  2617 W Pumpkin Ridge Dr.,  Anthem, AZ 85086-3027

# EXHIBIT E

**2022-005-6471-4**

**ARIZONA**
**SECRETARY OF STATE**
**09/29/22 13:11**
**F I L E D**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**Wolters Kluwer Lien Solutions 800-331-3282**

B. E-MAIL CONTACT AT FILER (optional)
**CTLSWebAck@wolterskluwer.com**

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

> **Lien Solutions**
> **P.O. Box 29071**
> **Glendale, CA  912099071**
> **USA**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **PRINTED MINT LLC** | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **1675 W Pinnacle Peak Rd** | **Phoenix** | **AZ** | **85027** | **USA** |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **OLD SECOND NATIONAL BANK** | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **37 SOUTH RIVER** | **AURORA** | **IL** | **60506-4172** | **USA** |

4. COLLATERAL: This financing statement covers the following collateral:

**ALL PERSONAL PROPERTY DESCRIBED IN EQUIPMENT FINANCE AGREEMENT # 63801063585, BY AND BETWEEN PRINTED MINT LLC AS BORROWER AND OLD SECOND NATIONAL BANK AS LENDER, INCLUDING PERSONAL PROPERTY DESCRIBED AS FOLLOWS: ONE (1) USED OVALJET HIGH SPEED DIRECT TO GARMENT PRINTER S/N: OJ-3HP/14S-4560-#017 WITH CALDERA SOFTWARE AND SEVEN (7) OVALJET SMALL SIZE PALLETS, TOGETHER WITH ALL SOFTWARE, ATTACHMENTS, REPLACEMENTS, ADDITIONAL COLLATERAL, AMENDMENTS, PARTS, SUBSTITUTIONS, ADDITIONS, REPAIRS, AND ACCESSORIES, INSURANCE PROCEEDS ATTRIBUTABLE TO THE LOSS OR DAMAGE TO ANY OF THE PERSONAL PROPERTY, THE PROCEEDS THEREFROM, AND ANY INTERIM FINANCINGS PURSUANT THERETO.**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
**89059440**